Judge Underwood
delivered t-he opinion of the Court.
These are writs of error prosecuted to reverse the same decree or parts thereof, and are founded upon the same record, and therefore will be considered together.
In 1-799, Jehrt Adair conveyed to John Atherton, eight hundred acres of land, bounded thus: Beginning at a white oak in Holt's four thousand acre survey, thence with his line S 45° E 283 poles to. a stake, thence south-546 poles to a stake, thence west 200 poles to a stake, and thence north 730 poles to the beginning. John Atherton in 1803, conveyed to Aaron Atherton-a part of said eight hundred acres, hut how much the deed does not inform us. The boundary as described in the deed is this: Beginning east at a stake, joining the west side of M. Shull’s survey-, running south 320 poles to a stake, thence west 200 poles to a stake, thence north 320 poles to a stakesthence east 200 poles to the beginning. Aaron Atherton in 1819, conveyed to Benjamin Cox á tract of land, “containing (as the deed says) four hnudred acres more or less, it beinga part-of an eight hundred acre tract, deeded by John Adair to John Atherton:, &cc. and off the south end thereof, beginning for the boundary of the said four hundred-acres at the south west corner of said eight hundred acres, and to run' thence north 320 poles, thence east 200 poles, thence *202 south 320 poles, thence 200 poles to the beginning/1'
In November, 1818, Benjamin Cox executed an ob-]¡gat¡on (;0 William Grant, conditioned to convey him f°ur hundred acres of land, “being the same on which said Cox now lives, and which the said Cox bought of Aaron Atherton.” The conveyance to be made on. j.jje payment of the purchase money. It appears from the proof very satisfactorily, that before John Atherton conveyed to Aaron Atherton, that Joseph Barnett, a surveyor, run a line east and west across the eight hundred acre tract, and marked it for the dividing line between their lands, and that Aaron took possession on the south side of the line so run and marked, and claimed it as the dividing line for more than twenty years. In I8ll, John Atherton conveyed to Philip Fulkerson, one hundred and twenty five acres, a line of which calls to begin on' Coleman’s line, and run east with Aaron Atherton’s line 107 l-2 poles. In 1816, John Atherton conveyed to Matthias Shults one hundred and twenty four .acres, calling to begin at a hickory and elm, and to run thence west 92 T2 poles to two white oaks on Aaron Atherton’s line. Under titles thus derived, Fulkerson and Shults claimed the land up to the marked line run by Barnett. Itis proved by Lewis Rogers the surveyer, that to begin at the beginning corner called for in the deed from Adair to John Atherton, and then to run according to the calls of the deed from Adair to said Atherton, so as to leave four hundred acres on the south end of the eight hundred acres for Aaron Atherton or his vendee, the dividing line must run across the tract 40 poles to the north of the line run and marked by Barnett, thus making it necessary to include fifty acres to fhe north of the line, which for distinction, we shall call Barnett’s line, in order to make up four hundred acres for Aaron Atherton or his vendee. Fulkerson and Shults claim up to Barnett’s line, and are unwilling to Surrender these fifty acres. Under this situation of things judgments were obtained against Grant by Cox, for the balance of the purchase money; and thereupon, Grant in his lifetime filed his bill praying for a rescisión of the contract, unless Cox would quiet the title,in other words, secure the fifty acres for Grant, which was claimed by Fulkerson and Shults *203 The bill also alleges that Grant had paid Cox §105, for which he was entitled to credit, and prayed for an injunction restraining the collection of the judgments, which was granted. ’ to
_ Pending the suit Grant died. By his will he devised the land he had bought of Cox to three of his devisees, to Daniel Grant one hundred and fifty acres upon condition, and to William and Posey D. Grant, sons of Posey D. Grant, dec. two hundred and fifty acres. An estate for life or during widowhood, was carved out of the fee for the use of Elizabeth Grant. Four persons were appointed executors of the will. In October, 1821, said devisees]! and the executors filed a bill of revivor in their names, and concluded with a prayer for the same decree as was made in the original bill. In July, 1824, William and Posey D. Grant, who were infants, were permitted to amend their bill of revivor, and did so, changing the prayer of the original, so far as to request that the contract might not be rescinded, but that if Cox failed to secure the land claimed by Fulkerson and Shults, that the executors might be allowed credit therefor upon the judgments at law, and that they might have a decree over against the executors for the amount for which they might thus obtain a credit; and to this end, said devisees made their amendment, a cross bill against the executors. The executors answered, denying their liability to the devisees,and insisting that they hada right to prose? cute the suit for a rescisión of the contract, unless Cox completed the title by quieting the claims of Fulkerson and Shults. Cox answered, stating that he had executed a deed to Grant in his lifetime, Uuii had been advised the deed was not properly, authenticated, that he was ready and willing-to.comply with his contract, that there was no interference between the claim sold by him to Grant, and those of Fulkerson and Shults, all claiming under the same title, and; his Cox’s, being the oldest, and that while he lived on the land, Fulkerson and Shults never committed waste on the land by cutting timber., &c. as charged in the bill.
The Court decreed a perpetuation of the injunction for the §105, and also, for §357, with interest *204 from the time the first note for the purchase money became due. To this part of the decree Cox excepts. The court decreed in favor of the devisees, William and Posey D.^Grant, against the executors-, the $¡357,. which, was credited to them on the judgments, and this part of the decree is complained of by the-executors-; and (he executors aud devisees have assigned: errors questioning the propriety of the decision,, because the contract was not rescinded.
if covenant real be not broken in lifetime of ob-ligee, his heirs are entitled.to all advantages resulting from the covenant, and are necessary parties to a suit for the rescisión of such covenant.
The first remark in reviewing the proceedings of the circuit court which we shall make, is, that proper parties were not before the court. This defect is embraced/by all the assignments of error-,.and for this alone, the decree must be reversed'. Cox’s obligation fora title was not violated in the lifetime of Grant; nor. could it be until the purchase money was paid or tendered, as that constituted a precedent condition to be complied with before-Cox was bound to convey. If there had baen no devisees, Grant’s heirs, according-to.the principles settled in the cases of Alney vs. Brownbee, II Bibb, 170, and Hatcher vs. Galloway’s executors, Ibid. 180; would have been entitled to all the advantages resulting from Cox’s covenant to convey, and would in all respects represent their ancestor so far as the land is concerned; and hence, the heirs in any controversy or suit, the object of which might be to rescind the contract, would be necessary parties. But for the statute of 1815,(1 Digest, 55,) after the death of Grant, the suit instituted by him could only be properly revived in the names of his heirs, so far as it might be necessary to bring before the court the parties representing the realty; Russell's heirs vs. Craig’s devisee, III Bibb, 377. But that statute must be construed as giving to the devisee the same right to revive which the heir previously possessed, and. in cases like the present, .where it is proper to have both the personalty andrealty represented,, the devisees and executors may unite in the revivor, in the manner prescribed in Milford’s pleadings,. 63, by supplemental bill. But in taking this course, all those having an inter est must be made parties, either complainant or defendant, so that the case may be finally disposed of at once, and all conflicting interests settled. Elizabeth Grant had an interest which might be deeply *205 affected by a rescisión of the contract. She therefore, was a- necessary party. The devise to Daniel Grant was conditional. When he made the last payment 16 Cox, which became due on the 1st of January, 1821, then the- executors were to make him'a deed for the one hundred and fifty acres which they were to Iajr off, including the tenement where he intended to live. Now it does not appear that Daniel ✓-i * * , Grant has complyed with thvscondition, upon which he was to obtain, a- title under the will. Indeed, the contrary seems to be the fact. There is no allegation in the supplemental bill, which shews that D. Grant has elected to take under the- will by complying with the condition, although that may be inferred from the circumstance of his styling himself a devi-see. This inference, however, is rebutted by the whole object manifested in the prosecution of the .suit by D. Grant, to-wit: the rescisión of the contract; for if that is accomplished, there is an end to any interest he might assert to the one hundred and fifty acres of land under the will, it does not appear that D. Grant is in any manner obliged by contract with the testator, to pay for the one hundred and fifty acres of land. If he be not, and should refuse to take it and pay for it, then, as it is manifest from the will, that the testator did not intend that William and Posey D. Grant should have this one hundred and fifty acres, they will- pass to- t-he heirs of the testator by descent. If this be the case, then the heirs are necessary parties, as representing in interest a part of the land.
The attempt on (he part of D. Grant to rescind the contract, is a strong indication that he does not intend to take the land upon the terms prescribed in ffie will.
It is, to say the least, altogether uncertain in the present attitude of the cause, whether he is bound to take the one hundred and fifty acres or not. If the contract should not be rescinded, and thereafter, he declines paying for the land, by such conduct he will throw the burden of the payment upon the estate of the testator, and permit the one hundred and fifty acres to descend to the heirs, and thus their interests may be materially affected by the proceedings in this *206 suit to which they are not parties. It seems to us,in the present aspect of the cause, the heirs of the testator were necessary parties.
We have felt some difficulty as to the mandate which should be given relative to the disposition of the cause upon its return to the circuit court. The bill charges a molestation or disturbance in the enjoyment of the land contracted for, by a claim set up toa part of it by Fulkerson and Shults, and by trespasses committed upon it, and prays, that unless Cox will quiet the title, and pay the damages occasioned by cutting t?ie timber, jthat the contract may be rescinded.
The bill does not allege, that Cox had no title - to the land north of Barnett’s line; nor does it charge any fraud upon Cox; nor does it in express terms allege that Cox had sold to Grant any land north of the line run by Barnett, as the division between John and Aaron Atherton. We are, therefore, of opinion that the allegations of the bill are too loose to justify the rescisión of the contract, if they were all confessed. A vendee cannot be entitled to a rescisión of a contract, merely because timber' is cut by a person claiming title to a part of the land, without the least suggestion in the bill, that the person so cutting has title,, or that the vendor had no title.
If the allegations of the bill had been sufficient to justify relief against Cox, then, upon the return of the cause, leave would have been given to make the proper parties, and to proceed; but in the absence of proper allegations as well as proper parties, it would be going further than any precedent has fever gone, to send the cause back for new allegations as well as new parties. Perhaps the essential allegations could not be made consistently with the truth, If they can, a dismissal of a bill in which they were not made, will not bar a new suit.
As the complainants in the circuit court did not shew any cause for relief, beyond the payment of the $105, upon the return of the cause, the bill must be dismissed without prejudice so far as relates to the land contract, but may stand as to the $105. The injunction for all above that sum must be dis; *207 solved, so far as it has not already been done, with damaSeS-
Denny, for Grant’s executors; McHenry, for Cox.
It follows from the foregoing view of the case, that the decree in favor of the devisees, Williata and Posey 1). Grant against the executors, is erroneous, and must be reversed. As between the heirs, devi-sees and executors of the testator, the present record exhibits some singular, and to us novel points. A part of the devisees desire to affirm the contract, whilst D. Grant, if he be regarded as a devisee, and the executors insist upon its rescisión. Suppose a vendor practices a fraud tipbn the vendee, who;, in consequence, contracts a heavy debt for a tract of land, and accepts a title bond. Say that Ihe vendee thereafter devises the land and dies. Then the fraud is discovered, and the executor representing the personalty wishes to avoid payment in consequence thereof, can the devisee silence his complaint on the score of fraud? Or where there are many devisees, and a part insist on affirming, and a part on rescinding, which shall prevail? Or in all these cases, may the personal representative act, independent of the control of the heirs or devisees? Regarding the disposition which we have determined to make of the cause.it might be considered as obiter dicta, to answer the foregoing questions; and therefore, we shall reserve any opinion touching them, entertained by us, until they are fully presented, the more especially, as the Chief Justice does not adjudicate in this case.
The decree is reversed and set aside, and the cause remanded for proceedings in conformity to this opinion. Cox must recover his costs in this court, and the executors must recover their costs of the devisees, William and Posey D. Grant. The decree in favor of Cox for costs, to go against the dev-isees personally, and against the executors de ,bonis testatoris.
Note — Chief Justice Robertson did not sit in this case.